

FILED & ENTERED

OCT 27 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae    DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| In re | Case No. 2:14-bk-25826-RK |
|---|---|
| DEAL MAKERS CONSULTANTS, INC., | Chapter 11 |
| Debtor. | **MEMORANDUM DECISION ON SHOWCASE INVESTMENTS, INC.'S MOTION FOR RELIEF FROM STAY AND ANNULMENT OF THE STAY**<br><br>DATE:   October 29, 2014<br>TIME:   2:30 p.m.<br>PLACE:  Courtroom 1675<br>        Roybal Federal Bldg<br>        255 East Temple Street<br>        Los Angeles, CA 90012 |

The above-captioned case came on for an evidentiary hearing before the undersigned United States Bankruptcy Judge on October 10, 2014 on Movant Showcase Investments, Inc.'s Motion for Relief From the Automatic Stay. ECF 11.  Movant seeks relief from and retroactive annulment of the automatic stay imposed by 11 U.S.C. § 362(d)(1), (2) and (4) related to real property at 6029 Eileen Avenue, Los Angeles, CA 90043 ("Eileen Property").  Debtor opposes the motion.  Although Debtor's Chapter 11

bankruptcy case was dismissed on October 9, 2014 and the automatic stay terminated by operation of law pursuant to 11 U.S.C. § 362(c)(2)(B), the motion is not moot because Movant seeks retroactive annulment of the automatic stay and in rem relief pursuant to 11 U.S.C. § 362(d)(4).

The facts are mostly undisputed. Debtor initiated this case by filing its voluntary petition under Chapter 11 of the Bankruptcy Code on August 18, 2014. Antoinette Roberson transferred title to the Eileen Property to Debtor as a gift for no consideration on August 19, 2014 as so dated and indicated on the deed itself. A nonjudicial foreclosure sale of the Eileen Property was conducted on August 20, 2014, in which Movant was the foreclosing party. *See Debtor's Post-Trial Brief,* ECF 68, pg. 2:7-3:13. Debtor disputes that Movant did not have knowledge of Debtor's bankruptcy case and the automatic stay at the time of the foreclosure sale and denies that the foreclosure sale validly transferred title to the Property to Movant. *Id* at 3:10-13.

The Motion was originally heard on September 16, 2014. At that hearing, the court identified the Motion as a contested matter within the meaning of Federal Rule of Bankruptcy Procedure 9014, and set the matter for an evidentiary hearing on October 10, 2014. At the October 10 hearing, the court noted the possibility that the Eileen Property was not property of the bankruptcy estate because any interest Debtor had in the Property was not recorded until August 19, 2014, after the bankruptcy petition was filed on August 18, 2014. The court ordered additional post-trial briefing on the issue of whether the Property is property of the estate and whether annulment is proper in this case. The parties timely filed additional briefing, which the court has now reviewed and considered. A further hearing was set for October 29, 2014 at 1:30 p.m., but the court now having considered the post-trial briefing of the parties determines that further oral argument and hearing are not necessary, vacates the hearing on October 29, 2014, takes the matter under submission and now issues its rulings in this memorandum decision.

2

1  Because the court finds that the motion for relief from the automatic stay and
2 retroactive annulment of the stay should be granted, it need not resolve the issue of
3 whether the Eileen Property is property of the bankruptcy estate. The court will assume,
4 for the purposes of this motion, that the Eileen Property was property of the bankruptcy
5 estate at the time of the foreclosure sale on August 20, 2014.

6  Movant has made a prima facie showing for relief under 11 U.S.C. § 362(d)(4) that
7 the transfer of all or part ownership of the Property was without its consent as a secured
8 creditor and without court approval and the filing of the bankruptcy petition was part of a
9 scheme to delay or hinder it as a secured creditor.  *Real Property Declaration of Andy*
10 *Dick in Support of Motion and Exhibits A through H to Motion; Trial Testimony of Andy*
11 *Dick.*  Based on this evidence, the transfer of the Property from the borrower on the loan
12 secured by the deed of trust with Movant as the beneficiary to Debtor was without its
13 knowledge or consent, and Debtor has not met its burden of proving otherwise, or with
14 court approval, pursuant to 11 U.S.C. § 362(g)(2).  The evidence indicates that the filing
15 of Debtor's bankruptcy petition and the transfer of the Eileen Property to Debtor took
16 place within one or two days before the foreclosure sale with notice being given to the
17 borrower, Roberson, well in advance of the sale, which supports findings that the transfer
18 was without the consent of the secured creditor, Movant, and that the filing of the
19 bankruptcy petition was part of a scheme to delay or hinder it in its imminent foreclosure
20 sale.  The court does not determine whether the filing of the bankruptcy petition was part
21 of a scheme to defraud because it has found alternatively that the evidence indicates that
22 the filing of the petition was intended to delay or hinder the foreclosure sale by Movant,
23 which is sufficient to establish a claim under 11 U.S.C. § 362(d)(4).

24  At the October 10, 2014, hearing, the court identified *In re Fjelsted*, 293 B.R. 12
25 (9th Cir. BAP 2003), as the leading decision regarding retroactive annulment of the
26 automatic stay.  *Fjelsted* sets forth twelve factors which courts should evaluate in
27 determining whether to grant retroactive annulment of the automatic stay. In setting out
28 the factors, however, the Bankruptcy Appellate Panel was careful to caution that "such

lists are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive." *In re Fjeldsted*, at 25.

The *Fjelsted* factors, and the court's determination of their effect on the analysis of whether to grant annulment in this case are:

**1. Number of filings;**

This factor is neutral, or weighs against annulment, there is no evidence of repeat filings by Debtor.

**2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;**

Again, this factor is neutral, there is no evidence of repeat filings.

**3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;**

Debtor argues that this factor weighs against annulment because there is already an agreement with a third-party buyer of the Eileen Property who will be harmed if the sale does not go through. Debtor argues that the third-party buyer may have to buy the Property from Movant at a higher price than the current agreement. *Debtor's Post-Trial Brief,* ECF 68, pg 8:9-24.

In the court's view, this factor is neutral or weighs in favor of annulment. In this court's view, the evidence of the viability of the third-party purchase offer was weak, and the court did not find the evidence of this transaction being reasonably likely to consummate to be credible. Moreover, as Debtor points out, Movant may be able to sell the property at a higher price if the stay is annulled, therefore any harm to the third-party buyer will be counterbalanced by benefit to the creditor, and vice versa.

**4. The Debtor's overall good faith (totality of circumstances test): *cf. In re Warren,* 89 B.R. 87, 93 (9th Cir. BAP 1988) (chapter 13 good faith);**

4

The court evaluates bad faith in a Chapter 11 bankruptcy case using the "badges of bad faith" identified in *In re Yukon Enterprises, Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984). Many of the badges of fraud apply here.

1. The transfer occurred within close proximity to the filing of the bankruptcy case. In fact, Glen Quilter, principal of the Debtor, acknowledges that Antoinette Roberson transferred her interest to the Debtor "in anticipation of a possible bankruptcy filing." *Debtor's Exhibits, Declaration of Glen Quilter in Support,* ¶10.
2. No consideration was paid for the transferred property.
3. There is no apparent means for Debtor to service the debt on the transferred Property. Debtor's Statement of Financial Affairs lists essentially no unencumbered assets and no income. *Debtor's Summary of Schedules,* ECF 22.

The court finds that this factor weighs strongly in favor of annulment, as it is apparent that the primary purpose of the transfer and bankruptcy filing was to delay Movant's right to foreclose its lien on the Eileen Property.

**5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;**

This factor is neutral or weighs in favor of annulment. There is insufficient, if any, evidence that Movant was aware that the automatic stay was in effect and applied to the Eileen Property. Movant claims that it "had no notice or knowledge of the asserted interest by this Debtor in the subject property. . . ." *Brief in Support of Movant's Request for Annulment and In Rem Relief From the Automatic Stay,* ECF 64, ¶5. Debtor, on the other hand, states that "Debtor's representative Quilter testified that he was in daily contact with the foreclosure trustee handling the foreclosure sale. It is unrealistic to believe that the foreclosure trustee did not communicate to Movant that Debtor was asserting an interest in the Property…" *Debtor's Post-Trial Brief,* ECF 68, pg. 4:18-22. There is no direct evidence that the creditor, Movant, knew of the stay, and foreknowledge of the stay before the foreclosure is unlikely because Debtor was not on record title for the Eileen Property until the deed transferring title from Roberson to

1  Debtor was recorded on August 19, 2014, the day before the foreclosure sale. This fact
2  that the deed transferring Roberson's interest in the Property was not recorded until
3  August 19, 2014, makes it more likely that Movant was not aware that the stay applied to
4  the Eileen Property.

**6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;**

This factor weighs heavily in favor of annulment. Debtor's bankruptcy case was dismissed for failure to comply with the Bankruptcy Code and Rules.

**7. The relative ease of restoring parties to the *status quo ante*;**

This factor weighs in favor of annulment. Because there is a material dispute between the parties as to whether Debtor had an interest in the Eileen Property prior to the transfer on August 19, 2014, it is unclear what effect a denial of annulment would have. The parties very well may be forced to litigate that issue. Because it is unclear what the *status quo ante* was, it would be difficult to restore the status quo now that the underlying bankruptcy case has been dismissed.

**8. The costs of annulment to debtors and creditors;**

This factor weighs in favor of annulment. Without annulment, Movant will have to reconduct the foreclosure sale now that stay relief is to be granted. It seems pointless to have another foreclosure sale since the underlying bankruptcy case has been dismissed. Movant will be out of pocket for the costs of a second nonjudicial foreclosure sale.

**9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;**

**10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;**

These two factors weigh in favor of annulment. Movant promptly filed this Motion for Relief From Stay only five days after the non-judicial foreclosure sale. There is no evidence that Movant continued to take steps in violation of the automatic stay.

**11. Whether annulment of the stay will cause irreparable injury to the debtor;**

6

1    This factor weighs against annulment.  As pointed out by Debtor, if annulment is granted, it is very likely that Debtor will file another bankruptcy case.

**12. Whether stay relief will promote judicial economy or other efficiencies.**

Again, Debtor argues that granting annulment will force Debtor to re-enter bankruptcy, and that denying annulment will therefore promote judicial economy. However, since the court determines that Movant is entitled to relief from stay under 11 U.S.C. § 362(d)(4), this factor supports annulment in that judicial economy will not be affected by granting annulment.

The court finds factors 4, 6, 9, and 10 to be particularly influential in its analysis of Movant's request for annulment of stay.  These factors indicate Debtor's lack of good faith as evidenced by its efforts to delay or hinder Movant's foreclosure sale as shown by its receiving the transfer of the Property and filing for bankruptcy simultaneously and by its failure to comply with the basic requirements of the Bankruptcy Code and rules in this case, as well as Movant's diligence in attempting to comply with the Bankruptcy Code's requirements and lack of knowledge of the bankruptcy case and the automatic stay before taking collection action, which lead this court to determine that retroactive annulment of stay should be granted in this case.

Based on the reasons set forth above, and the arguments in the moving papers, IT IS HEREBY ORDERED that Movant's Motion for Relief From Stay is GRANTED and that the automatic stay is annulled retroactively.

///

///

7

1   The hearing currently scheduled for October 29, 2014 at 1:30 p.m. is VACATED.

2   Counsel for Movant is ordered to submit a proposed final order granting stay relief

3   on the court's mandatory stay relief form within 7 days of entry of this decision.

4   IT IS SO ORDERED.

###

Date: October 27, 2014

_____
Robert Kwan
United States Bankruptcy Judge